PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:11CR00340 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| SHAUNDELLE DIAL, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** (Resolving ECF No. 25) |

Defendant Shaundelle Dial has moved the Court to suppress the pretrial identification of Dial in a photograph lineup made by James Ciaccia, the victim of a car jacking at gunpoint. Dial charges that the identification resulted from an unduly suggestive law enforcement sponsored photograph lineup and lacks reliability under the totality of the circumstances. ECF No. 25.

For the reasons provided below, Defendant Dial's motion to suppress is denied.

## I. Background

On June 23, 2011, James Ciaccia, who had been having lunch while seated in his car in a public park was approached by a young African-American male who pointed a handgun at Ciaccia demanded that Ciaccia surrender the car and his wallet. After initially objecting, Ciaccia obeyed.

After the assailant drove off in Ciaccia's car, another individual who had been parked nearby called 911.

Officers from Warrensville Heights Police Department responded and took a statement from Ciaccia, who described the car jacker as a young black male, in his late teens or early twenties, wearing dark clothing.

(1:11CR00340)

Two days later, Cleveland Police Department patrol officers confiscated Ciaccia's stolen car after the driver crashed while attempting to flee the police.  After a foot-chase, Dial, who had been the front-seat passenger, was apprehended and arrested along with the driver and another passenger.

On July 1, 2012, eight days after the car jacking, Ciaccia observed a photograph lineup. The lineup was administered through the use of a folder system that included a picture of Dial obtained from the City of Cleveland Police Department; six filler photographs of individuals who were not suspected of the crime obtained from other files within the Warrensville Heights Police Department and the Ohio Law Enforcement Gateway ("OHLEG"); and three blank folders.  The photographs and blanks were placed into individual numbered folders.  Detective Fossett, a blinded administrator, did not know which photograph was being viewed.  Ciaccia testified that prior to viewing the photographs he had not been told whether the assailant's photograph would be among those in the lineup.

Ciaccia identified Dial's photograph as that of the assailant.  He stated that he felt "certain" that this was the person who had car jacked him.  He did not recognize any of the other individuals.  In a short hand-written statement, Ciaccia stated, "one particular picture caught my attention as the person who robbed me at gunpoint on June 23rd at the Green Road Park in Warrensville Heights.  That photograph, number 9, was Defendant Shaundelle Dial."  *See* ECF No. 27 at 1-6.

Dial, who has been charged in a three-count indictment with the armed car jacking of Ciaccia, and related firearms offenses, complains that the photograph lineup unduly suggested

2

(1:11CR00340)

that he was the perpetrator because his was the only photograph in which the "participant" was not wearing a shirt.  ECF No. 25.  The Court held a hearing on this matter.  *See* Court Docket 01/09/2012.  During the hearing, Dial's counsel also suggested that Ciaccia's attention may have been unfairly directed toward Dial's photograph because the numbers underneath Dial's photograph differed from all the others.

## II.  Law & Analysis

Due process requires the exclusion of testimony of pretrial identification when identification procedures used were unnecessarily suggestive or caused a mistaken or coerced identification.  *Neil v. Biggers*, 409 U.S. 188, 198 (1972) ("Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the reason that the increased chance of misidentification is gratuitous.").  In *U.S. v. Hill*, 967 F.2d 226, 230-32 (6th Cir. 1992), the Sixth Circuit ruled that the *Biggers* analysis, which resulted from a challenge to an in-court identification, also applies to impermissibly suggestive pre-trial identifications.  *Id*. ("All of the concerns that underlie the *Biggers* analysis, including the degree of suggestiveness, the chance of mistake, and the threat to due process are no less applicable when the identification takes place for the first time at trial.").

The United States Constitution affords a defendant protection against "a conviction based on evidence of questionable reliability" by providing the defendant a manner "to persuade the jury that the evidence should be discounted as unworthy of credit."  *Perry v. New Hampshire*, ___ ___ St.Ct. ___ ___, Case No. 10-8974, 2012 WL 75048, at *5 (Nov. 2, 2011).  The Due Process Clause precludes the admission of such evidence "[o]nly when evidence 'is so extremely unfair

(1:11CR00340)

that its admission violates fundamental conceptions of justice[.]'" *Id.* at *1 (quoting *Dowling v. U.S.*, 493 U.S. 342, 352 (1990)).  In *Perry v. New Hampshire*, U.S. Supreme Court explained the following:[1]

> [D]ue process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary. [] Even when the police use such a procedure, however, suppression of the resulting identification is not the inevitable consequence. [] Instead, due process requires courts to assess, on a case-by-case basis, whether improper police conduct created a substantial likelihood of misidentification. [] [R]eliability [of the eyewitness identification] is the linchpin of that evaluation.  Where the indicators of [a witness'] ability to make an accurate identification are outweighed by the corrupting effect of law enforcement suggestion, the identification should be suppressed. [] Otherwise, the identification, assuming no other barrier to its admission, should be submitted to the jury.

*Perry*, 2012 WL 75048, at *1 (internal citations and quotations omitted).  At trial, "counsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification[,]" thus substantially lessening the likelihood of convictions based upon misidentifications.  *Clemons v. U.S.*, 408 F.2d 1230, 1251 (D.C. Cir. 1968).

Under the *Biggers*' analysis, first, the defendant bears the burden of proving that the identification procedures were impermissibly suggestive.  *Biggers*, 409 U.S. at 199-200.  If the defendant proves that the identification procedures were impermissibly suggestive, the trial court

---

[1]  There is no dispute that photograph lineup at issue in the instant case was arranged by law enforcement.  *Cf. Perry*, 2012 WL 75048, at *5 ("We granted certiorari to resolve a division of opinion on the question whether the Due Process Clause requires a trial judge to conduct a preliminary assessment of the reliability of an eyewitness identification made under suggestive circumstances not arranged by the police.").

4

(1:11CR00340)

must next determine whether, under the totality of the circumstances, the testimony is

nevertheless reliable.  *Id*.  The corruptive effect of the suggestive identification should be

weighed against the following *Biggers* factors.

> (1) the opportunity of the witness to view the criminal at the time of the crime;
> (2) the witness'degree of attention;
> (3) the accuracy of the witness' prior description of the criminal;
> (4) the level of certainty demonstrated by the witness at the confrontation; and,
> (5) the length of time between the crime and the confrontation.

*See Biggers*, 409 U.S. at 199-200.

**A.  Dial's Claim of Unduly Suggestive**

Dial is an African American male born in late 1991.  He was 19 years old at the time of

the car jacking and is decidedly brown-skinned, *i.e.* not very dark or light.  According to the

United States Probation Office, Dial's height is 5'5."  His weight is approximately 170 pounds.

The filler photographs all depicted decidely brown-skinned African-American males,

none were very light or dark.  Each photo consisted of the male's upper shoulders, neck, and

face.  Each person occupied approximately the same amount of space in the picture.  Each had

short hair.  None had tattoos, scars, or other distinguishing marks visible from the photograph.

Each bore the same general expression.  Each filler photograph depicted a male born in either

1990, 1991, or 1992, making them between the ages of 18 and 21.  While, none of the

photographs reported heights or weights, the United States has averred that each filler was

between 5'6" tall and 5'9" tall and between 160-183 pounds.  ECF No. 27 at 5.   There were no

height markers in any of the photographs.  A witness such as Ciaccia would have had to

approximate the height or weight of the individuals.  Based upon the similarities in gender, race,

(1:11CR00340)

skin tone, age, and apparent height and weight, the filler photographs reasonably resembled Dial.

There were, however, two distinctions that Dial complained of:  (1) the appearance of numbers immediately beneath and, for the fillers, at the bottom of each photograph; and (2) Dial's photograph was also the only one in which the subject appeared to not be wearing a shirt.

Even when the police achieve the most balanced photograph identification procedures, there still lurks the danger that a witness may make an incorrect identification.  *Simmons v. U.S.,* *390 U.S. 377, 383 (1968)*.  "Despite the hazards of initial identification by photograph, this procedure has been widely and effectively used in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs." *Id* at 384.  It is widely believed that errors in identification that arise from the use of photograph identification procedures are "substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." *Id*.  After the close of evidence, counsel can argue in summation the factors casting doubt as to the accuracy of the identification, including a belief that the identification procedure was unduly suggestive.  *Manson v. Braithwaite,* 432 U.S. 98, *113 n.14 (1977)*.  Ultimately, identification evidence "is for the jury to weigh . . . [the Supreme Court has been] content to rely upon the good sense and judgment of American juries, [understanding that] evidence with some element of untrustworthiness is customary grist for the jury mill." *Manson,* 432 U.S. at 116.

## 1.  The Numbers

The numbers beneath Dial's photograph were of a different style and sequence than those

6

(1:11CR00340)

beneath the filler photographs.  The numbers immediately beneath Dial's photograph appear to

be the typical numerical style and sequence of a date: "6/26/2011."  The numbers beneath the

filler photographs appear to be a random string of 9 digits, *e.g.* "137037493."  The combination

of numbers varied but the style or sequence was the same.  The numbers at the very bottom of the

filler photographs began "https."  The "https" sequence of numbers is not on Dial's photograph.

On cross-examination, Ciaccia testified that he did not recall having seen the numbers beneath

the photographs when he initially viewed them.  In response to Defense counsel questions about

whether Ciaccia believed the police had a suspect in custody, Ciaccia responded that he knew,

from his police-officer-niece, that three people (believed to have been in his stolen car) were in

custody, but he did not think one of them would be his assailant.[2]

Photograph lineups are suggestive.  Even if properly performed, the mere presence of a

photograph in such a procedure suggests, to some extent, "select me."  Due process concerns

arise, however, when an unnecessary or impermissible suggestion creates an unacceptable risk of

misidentification or selection.  *Perry*, 2012 WL 75048, at *1.  Ciaccia knew that arrests had been

made when his car was recovered just a few days after his carjacking, does not *unduly* or

impermissibly suggest that, because Dial's photograph had a *date* proximate to the arrest of the

stolen car's occupants, that he was one of those arrested.  Nor is it unduly suggestive that the

types and sequence of numbers beneath Dial's photo were different from the others.  The Sixth

Circuit has held that a photograph of a defendant containing mug shot markers was not unduly

---

[2] The arrests occurred just a few days after the car jacking, on or close to the date under Dial's photograph.

7

(1:11CR00340)

suggestive even when the other photographs did not contain mug shot markers and also "that an array picturing a defendant without mug shot markers was not unduly suggestive even though all other defendants' pictures did have mug shot markers." *U.S. v. Reamey*, Case No. 02-3985, 2005 WL 1285646, at *3 (6th Cir. May 23, 2005) (referring to *U.S. v. Tyler*, 714 F.2d 664, 667-68 (6th Cir. 1983); *U.S. v. Perry*, 991 F.2d 304, 311 (6th Cir. 1993).

### 2. Shirtless Image

While the shirtless image may have made a difference under certain circumstances, the Court finds that it did not in this case.[3]  Nudity is not indicative of criminality.  Additionally, prior to the lineup, Ciaccia described his assailant as a young black male . . . wearing dark clothing.  Shirtless is not "dark clothing."  Four of the six fillers–persons not chosen by Ciaccia–were, however, photographed wearing dark tops.  *See* Government's Exhibits 2, 4, 6 and 7.  To the extent the shirtless photograph made any difference at all, it may very well have discouraged Ciaccia from choosing Dial's photograph, given that he was not wearing "dark clothing."

"When creating a police lineup, the police are not required to 'conduct a search for identical twins in age, height, weight or facial features." *Reamey*, 2005 WL 1285646, at *3. The men pictured in the photographs were all African-American males of similar build, complexion, hairstyle, and age.  Based upon the evidence presented at the suppression hearing, it appears that Ciaccia's identification resulted from observations he made at the time of the car

_____

[3] As an aside, the Government offered  testimony that the shirtless photo was the only one available of Dial.

(1:11CR00340)

jacking, rather than anything the police said or did.  The Court, therefore,  is persuaded that the

distinctions–the numbers under the photograph and lack of clothing–are too minor, when

compared with the overwhelming similarities between Dial and those featured in the filler

photographs, to render the spread unduly suggestive.

**B.  Totality of the Circumstances, Application of the *Biggers'* Factors**

Because Dial has moved the Court to determine whether the lineup satisfies the *Biggers*

factors, despite its finding of no impermissible suggestion, the Court conducts an analysis relying

on the *Biggers* factors to decide whether the identification was reliable under the totality of the

circumstances.  That analysis follows.

The first two factors:  (1) the witness's opportunity to view the criminal at the time of the

crime and (2) the witness' degree of attention at the time of the crime support the reliability of

Ciaccia's identification.  *Biggers*, 409 U.S. at 199-200.  While testifying, Ciaccia recalled the car

jacking in great detail.  He testified that he "definitely" felt as if he had a good view of his

assailant's face during the car jacking, and that while he could not recall the clothing worn by his

assailant, he had focused on his assailant's face and eyes.  He identified Dial as the assailant,

whom approached his car and, while standing only a couple of feet away, pointed a gun at him

and  ordered him out of the car.  On cross examination, Ciaccia credibly maintained  that he was

not so overwhelmed by the gun that he failed to focus on his assailant.  Overall, the record

reflects that Ciaccia  had a substantial opportunity to view his assailant upon whom his attention

was riveted, despite the stress of the car jacking.  These factors bode in favor of reliability.

The third *Biggers* factor focuses on the accuracy of the witness's prior identification of

(1:11CR00340)

the defendant.  *Id*.  When reporting the car jacking immediately after its occurrence, Ciaccia was only able to provide a general description, recalling the assailant was African-American, in early 20's or late teens, and wore dark clothing.  At worst this factor is ambiguous; more meaningfully, it does not detract from reliability.

The fourth *Biggers* factor centers on the level of certainty exhibited by the witness at the time of identification.  *Id*.  Ciaccia testified that upon seeing Dial's photograph, he told the detective administering the lineup:  "This is the person that tried to rob me, or did rob me . . . and then took my car."[4]  As earlier stated, Ciaccia also testified that although he knew that the police had recovered his car and arrested those in possession, he did not believe that "his" assailant would be among those apprehended.  He credibly testified that he was "shocked" to see the assailant's photograph; he thought he would never see his assailant again.  Ciaccia's testimony was unequivocal; his level of certainty was high.

The fifth *Biggers* factor concerns the length of time that elapsed between the crime and the identification.  *Id*.  The photo lineup took place only seven days after the crime.  The one-week lapse between the car jacking and the photograph lineup encourages a finding of reliability.  While Ciaccia testified that  the crime took only a minute, the intensity of the interaction–in an unusual stance, Ciaccia  jousted for possession of the gun, before thinking better of that tactic and allowing the assailant to flee in his car–bolsters rather than detracts from a finding of reliability.

---

[4] While the question before the Court regards the pretrial identification of Dial.  The record reflects that, during the hearing, Ciaccia also made an in-court identification of Dial as the person who car jacked him.

10

(1:11CR00340)

The linchpin is the reliability of the identification.  When measured against that standard, Dial does not present a close case.  The consideration of all of the *Biggers* factors taken together compels a conclusion that, regardless of whether the photograph lineup was impermissibly suggestive, Ciaccia's identification of Dial's photograph is reliable enough to be admissible at trial.

### III.  Conclusion

For the aforementioned reasons, the Court denies Defendant Shaundelle Dial's motion to suppress.  ECF No. 25.

Also pending is Dial's Motion for a Court Order requesting that he be removed from State custody and placed into federal custody during the pendency of the instant matter.  ECF No. 30.  That motion is also denied.


IT IS SO ORDERED.


February 27, 2012                        /s/ Benita Y. Pearson
Date                                     Benita Y. Pearson
                                         United States District Judge

11